Filed 5/21/14  P. v. Abarca CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B248332 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA119349) |
| v. | |
| EMILIANO ABARCA, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. John A. Torribio, Judge.  Affirmed.

Lisa M. J. Spillman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

Defendant Emiliano Abarca was convicted by jury of driving under the influence causing injury (Veh. Code, § 23153, subd. (a); count 1), and driving with a 0.08 percent blood alcohol level causing injury (Veh. Code, § 23153, subd. (b); count 2), with great bodily injury (Pen. Code, § 12022.7, subd. (a)) and prior conviction allegations (Veh. Code, § 23152, subd. (b)) for each count. The trial court sentenced defendant to the midterm of two years on count 1, plus three years for the great bodily injury enhancement. His sentence on the second count was stayed under Penal Code section 654.

Defendant contends there is insufficient evidence he committed an illegal act or failed to perform a legal duty causing the victim's injury, a required showing for both counts. Defendant contends the evidence he failed to yield to the victim (who had the right of way) was improbable. Defendant also contends the trial court erred in failing to grant his motion for acquittal on this same basis. Lastly, defendant contends the trial court abused its discretion when it denied probation. Finding no merit in any of these contentions, we affirm.

## FACTS

Angelica Ponce dated defendant for five years. On April 10, 2011, defendant came to Ponce's apartment around 4:00 p.m., and they watched a movie together. While at Ponce's apartment, defendant "casually" sipped one whiskey with water and ice, and ate two tacos.

At 5:30 p.m., defendant and Ponce got ready to go out to dinner. They drove in defendant's Chrysler to El Torito restaurant in La Palma. They were seated for dinner by 6:20 p.m. and they each ordered a margarita. Their drinks arrived within five minutes. They also ordered enchiladas and tortilla soup, which arrived at their table between 6:35 and 6:40 p.m. It took them 20 to 30 minutes to eat their meal, after which they ordered a second round of margaritas. They received their drinks around 7:15 or 7:20 p.m., and finished drinking by 7:50 p.m. Defendant paid the bill, and they left the

2

restaurant by 8:15 p.m. Ponce was slightly dizzy from the drinks. She lied at the preliminary hearing when she testified she was sober when leaving the restaurant.

Defendant drove towards Ponce's apartment, and they approached the complex within 10 minutes of leaving the restaurant. When defendant started to make a left turn to the complex, Ponce did not notice any oncoming traffic. She could not remember whether defendant stopped before making the left turn. As defendant was turning, Ponce noticed the headlight of a motorcycle in her peripheral vision. Ponce raised her hands to her face before the motorcycle, driven by Robert Duran, crashed into the passenger side of defendant's car. Ponce could not remember hearing the screeching of any brakes before the impact.

Los Angeles County Sheriff's Sergeant Ryan Vienna arrived at the scene of the accident at 8:30 p.m. He saw that the right front passenger panel of defendant's car was damaged. Duran's motorcycle was completely destroyed, broken into pieces. Duran was on the ground, and was not breathing. Sergeant Vienna removed Duran's helmet and performed CPR. Duran gasped for air and started breathing again.

Sergeant Vienna interviewed Ponce. Ponce told him defendant had not been drinking because she did not want him to be arrested. Ponce admitted at trial that defendant was under the influence of alcohol when he drove.

Deputy Chris Bronowicki arrived at the scene of the accident and took photographs. He took pictures of a skid mark, and placed an orange mark where he believed it began. He measured it to be 89 feet long. He noticed a gouge mark where the skid mark ended, but he did not photograph it. He also created a "factual diagram" that documented the physical evidence at the scene of the accident, including the location of the vehicles, skid marks, and gouge marks.

Deputy Bronowicki administered field sobriety tests to defendant, which were recorded on video, and played for the jury. Defendant seemed intoxicated; he had slowed or slurred speech, an unsteady gait, bloodshot and watery eyes, and he smelled of alcohol. Defendant told responding deputies that he had only consumed one drink. However, defendant repeatedly failed to follow Deputy Bronowicki's instructions and was unable

3

to complete the field sobriety tests properly. For example, he swayed noticeably during the Romberg Balance Test. He also used his left hand when he was instructed to use his right hand in the finger to nose test, and he did not follow instructions to return his hand to his side after touching his nose. He also swayed while performing the test. Defendant could not track an object with his eyes without moving his head, as he was instructed to do. Therefore, Deputy Bronowicki concluded that defendant had been driving while intoxicated, and arrested him at 10:03 p.m.[1]

Detective Russell Townsley, an accident investigation and reconstruction expert, investigated the collision. He arrived at the scene at 9:50 p.m., and saw defendant's car and Duran's motorcycle. He observed a lengthy skid mark, and concluded it was caused by Duran's tire when Duran braked, causing the wheel to lock. He saw gouge marks near the end of the skid mark, caused by the motorcycle's right foot pegs.

The street on which the accident occurred was on a hill. Drivers in opposing traffic would be unable to see each other until passing over the crest of the hill. Oncoming traffic would have been visible to defendant for 483 feet (between the point of impact and where the hill crested).

Detective Townsley noted that there was a small error in Bronowicki's "factual diagram" of the scene. He did not believe the gouge marks were correctly noted on the diagram, and believed that the collision occurred at the gouge mark in the eastbound number one lane. Also, Detective Townsley believed that Deputy Bronowicki's orange marks on the road, demarking the motorcycle's skid mark, did not accurately reflect where the mark started.

---

[1]    During cross-examination of Deputy Bronowicki, when shown the "factual diagram" of the accident scene he had created, he testified the point of impact was not correctly designated. He also testified that there was one gouge mark in the pavement, at the end of the skid mark. He admitted that he testified at the preliminary hearing that he did not know what caused the gouge mark, although at trial he believed the mark was made by the motorcycle's foot peg.

According to Detective Townsley, Duran was traveling between 48 to 53 miles per hour before he applied his brakes, 90 feet before the impact. When the car and motorcycle collided, Duran was traveling between 47 to 51 miles per hour.

Detective Townsley was also an expert in field sobriety tests, and after watching the video of the field sobriety tests administered to defendant, concluded that defendant was under the influence of alcohol.

When defendant arrived at the Lakewood Police Station jail at 10:35 p.m., Deputy Maira Llamas administered the Datamaster Breathalyzer test to determine his blood alcohol content (BAC). At first, defendant did not give a proper sample for the test. When Deputy Llamas gave the test again, the test returned results of 0.11 percent at 10:35 p.m. and 0.12 percent at 10:38 p.m.

Criminalist Juan Apodaca reviewed the breathalyzer results, and concluded the tests results were accurate and the breathalyzer was functioning properly. Based on a hypothetical tracking the facts of this case, Apodaca concluded that a man of defendant's size would have a BAC of 0.11 to 0.15 percent or 0.12 to 0.16 percent at 8:30 p.m., when the accident occurred. An individual would have to consume between five and seven drinks to have the BAC values attributed to defendant. If defendant had only consumed the amount of alcohol to which Ponce testified, defendant's BAC would have been only 0.04 percent.

Duran was hospitalized for three months after the accident. He required surgery to repair a broken clavicle and both of his ankles. He also needed extensive therapy to recover from the accident. His memory was impaired, and he had no recollection of the accident.

Ponce testified again on defendant's behalf. She returned to the scene of the accident the day after the accident and saw no skid marks. However, she admitted she was not looking for skid marks.

Dr. Robert Coppolino, an accident reconstruction expert, testified for the defense. He opined that the accident happened in the eastbound number two lane, based primarily on the location of a fluid leak he believed originated from defendant's car.

5

Dr. Coppolino opined that Duran's motorcycle was traveling 62 miles per hour upon impact, and that it skidded 62 feet after the collision. He opined the speed of defendant's car upon impact was 10 miles per hour. According to Dr. Coppolino, Duran's motorcycle was not visible to defendant when defendant initiated his left turn.

Dr. Coppolino reviewed Detective Townsley's report, and met with Detective Townsley. He disagreed with the detective's assessment of the motorcycle's speed before the collision. He believed that either Townsley or Bronowicki was incorrect about the observations reported at the scene of the accident. However, his opinions were based, in part, on observations of the scene of the crash six months after the crash occurred. Also, his opinions assumed a 0.7 second decision time before executing a left turn, despite the fact that decision time would be extended if the driver was under the influence of alcohol.

## DISCUSSION

Defendant contends insufficient evidence supports the finding that he failed to yield to Duran, reasoning Detective Townsley's testimony was improbable because his assessment of where the skid marks began was different from Deputy Bronowicki's; both Townsley and Bronowicki testified that the diagram of the accident was incorrect, but for different reasons; and Townsley and Bronowicki testified to different locations and characteristics of the gouge marks, and what caused the gouge marks, among other differences in their testimony. For these same reasons, he contends the trial court erred in failing to grant his motion for acquittal. He also contends the trial court abused its discretion in denying probation because the trial court relied on a misstatement of the evidence by the prosecution. Defendant contends he received ineffective assistance of counsel, because his trial attorney did not object to the denial of probation.

We conclude there was ample evidence supporting defendant's conviction, and the existence of conflicting evidence does not vitiate the jury's finding that defendant failed to yield to Duran. Defendant asks this court to reweigh the evidence which we cannot do. We also find that the trial court did not abuse its discretion in sentencing defendant to prison rather than granting probation.

6

### 1. Sufficiency of the Evidence

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432.) Therefore, the reviewing court's "opinion that the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime does not warrant a reversal of the judgment." (*People v. Hill* (1998) 17 Cal.4th 800, 849.) Reversal is only warranted when it clearly appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin*, *supra*, at p. 331.)

We defer to the trier of fact's evaluation of credibility. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Neither conflicts in the evidence nor suspicious testimony justify the reversal of a judgment, because it is the exclusive province of the trier of fact to determine the credibility of witnesses and the truth or falsity of the facts testified to. (*People v. Huston* (1943) 21 Cal.2d 690, 693, overruled on other grounds in *People v. Burton* (1961) 55 Cal.2d 328, 352.) An exception to this rule is when the witness's statements are physically impossible or inherently improbable. To be inherently improbable, the falsity of the statements " ' " 'must be apparent without resorting to inferences or deductions. [Citations.]' " ' [Citation.]" (*People v. Sassounian* (1986) 182 Cal.App.3d 361, 409.)

Defendant's conviction for driving under the influence and causing injury on both counts requires a showing that defendant committed "any act forbidden by law" or "neglect[ed] any duty imposed by law." (Veh. Code, § 23153, subds. (a) & (b).) The prosecution's theory of proof of this element was that defendant failed to yield to Duran when making a left turn into Ponce's apartment complex. (See § 21801.)

7

Defendant claims small differences in Detective Townsley's and Deputy Bronowicki's observations, and inaccuracies on the crash diagram, render Detective Townsley's expert opinion incredible and improbable. However, " '[i]t is well settled in California that one witness, if believed by the jury, is sufficient to sustain a verdict. To warrant the rejection by a reviewing court of statements given by a witness who has been believed by the trial court or the jury, there must exist either a physical impossibility that they are true, or it must be such as to shock the moral sense of the court; it must be inherently improbable and such inherent improbability must plainly appear.' [Citations.]" (*People v. Watts* (1999) 76 Cal.App.4th 1250, 1259.) There was nothing impossible about Detective Townsley's opinion that the collision occurred in the number one lane. This opinion, coupled with the opinion about the rate of speed Duran was traveling, the evidence that Duran braked for 90 feet, and the visibility from defendant's vantage point, clearly supports a finding that defendant failed to yield to Duran. Indeed, defendant agrees this evidence, if credited, supports his conviction. Although defendant's expert disagreed with this assessment, it was for the jury to weigh and reconcile the credibility of the various witnesses.

For these same reasons, we also find no error in denying defendant's motion for acquittal under Penal Code section 1118.1.

## 2. Probation

Defendant next claims the trial court erroneously denied probation because the court relied on a misrepresentation of fact in the People's sentencing memorandum. Defendant failed to raise the issue below; therefore, the issue has been waived. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 755; *People v. Scott* (1994) 9 Cal.4th 331, 353.) Predictably, defendant complains that counsel's failure to object constitutes ineffective assistance of counsel. Assuming, for argument's sake, that defendant's claim was preserved for review or would be reached in addressing his claim of ineffective assistance of counsel, it has no merit. (See *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218 [a defendant claiming ineffective assistance of counsel must also show prejudice; namely, a

8

reasonable probability that but for counsel's error, the result of the proceeding would have been different].)

A trial court has broad discretion to determine whether a defendant is suitable for probation. (*People v. Welch* (1993) 5 Cal.4th 228, 233; *People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) A court abuses its discretion by denying probation only when its determination is arbitrary, capricious, or beyond the bounds of reason. (See *People v. Warner* (1978) 20 Cal.3d 678, 683.) Moreover, a single aggravating factor may support the denial of probation, and the court is presumed to have considered the relevant factors set forth in the California Rules of Court pertaining to the grant or denial of probation absent a record reflecting otherwise. (*People v. Robinson* (1992) 11 Cal.App.4th 609, 615; rule 4.409.)

In denying probation, the trial court did not state its reasons. Instead, it indicated that it had relied on the probation report and the People's sentencing memorandum. The sentencing memorandum sought the maximum sentence of six years based on defendant's high BAC "of approximately 0.15% / 0.16%," the severity of the victim's injuries, the impact on the victim and the victim's family, and defendant's prior record of two DUI convictions. The probation report disclosed two DUI convictions and recommended that probation be denied. The victim's older sister testified at the sentencing hearing, and described Duran's significant injuries, and his continued impairment. According to his sister, Robert Duran "today suffers from confusion, short term memory loss, does not comprehend sarcasm or jokes." He is "different because his brain will not work the same way as yours and mine."

Defendant contends the portion of the sentencing memorandum which stated that his BAC was "0.15% / 0.16%" was underlined, evidencing that the trial court relied on this fact when denying probation, and that this was a misstatement of the evidence at trial. The trial evidence was that defendant had a BAC of either 0.11 to 0.15 percent or 0.12 to 0.16 percent when the accident occurred.

It is pure conjecture that the trial court relied on this fact alone when denying probation. Moreover, the sentencing memorandum does not misstate the evidence, but

9

rather merely highlights the upper limits to which the criminalist testified. Apodaca testified that a man of defendant's size would have a BAC of 0.11 to 0.15 percent or 0.12 to 0.16 percent when the accident occurred. Fairly read, the record reflects the trial court considered, at the very least, the criteria of (1) "[w]hether the defendant inflicted physical or emotional injury"; (2) defendant's "[p]rior record of criminal conduct"; and (3) defendant's "[a]bility to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse" (Cal. Rules of Court, rule 4.414(a)(4), (b)(1) & (b)(4).) Under these circumstances any argument for probation or a low term prison sentence would have been futile because defendant would not have been an appropriate candidate for either one.

## DISPOSITION

The judgment is affirmed.


GRIMES, J.

We concur:

RUBIN, Acting P. J.


FLIER, J.

10